IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


CONNECTION DISTRIBUTING CO., *et al.*,   )      CASE NO.  1:95CV1993
                                                       )

          Plaintiffs,   )

                                                       )

vs.   )      Judge John M. Manos

                                                       )

ALBERTO GONZALEZ,   )

                                                       )

          Defendant.   )      <u>MEMORANDUM OF OPINION</u>


On September 13, 1995, Plaintiff Connection Distributing Co.  filed this action against

the Attorney General of the United States seeking declaratory and injunctive relief to prohibit

enforcement of the Child Protection Restoration and Penalties Enhancement Act of 1990,

codified at 18 U.S.C. § 2257.  On May 25, 2000, the Court Granted summary judgment in favor

of the Defendant that the statute is constitutional.

On September 24, 2002, the Sixth Circuit remanded the action for reconsideration in

view of recent Supreme Court decisions rendered subsequent to this Court's ruling, including:

(1) <u>Watchtower Bible & Tract Society of N.Y., Inc. v. Village of Stratton</u>, 536 U.S. 150 (2002);

(2) <u>City of  Los Angeles v. Alameda Books, Inc.</u>, 535 U.S. 425 (2002); (3) <u>Ashcroft v. Free

Speech Coalition</u>, 535 U.S. 234 (2002); and (4) <u>United States v. Playboy Entertainment Group,</u>

Inc., 529 U.S. 803 (2000).  The Sixth Circuit also concluded that this Court correctly applied intermediate scrutiny in analyzing the validity of the statute.

Following the remand, the Court set a discovery and briefing schedule on the constitutionality of the statute.  On August 20, 2003, the Plaintiffs filed an Amended Complaint based on intervening amendments to the statute.  On September 2, 2003, the Defendant filed a motion for summary judgment as to the Amended Complaint (Docket No. 105), and on November 5, 2003, the Plaintiffs filed their own motion for a preliminary injunction to preclude enforcement of the amended statute (Docket No. 108).

Subsequently, the Department of Justice issued new regulations, to be effective on June 23, 2005, to implement the statute.  On June 16, 2005, the Plaintiffs filed a motion for a temporary restraining order to preclude enforcement of the new regulations, which, by agreement of the parties and the Court, was converted into a motion for a preliminary injunction (Docket No. 118).  On August 26, 2005, the Court held a preliminary injunction hearing.  The parties have fully briefed the issues.

For the following reasons, the Plaintiffs' motions for preliminary injunction are DENIED, and the Defendant's motion for summary judgment is GRANTED.

## I. FACTS

On September 13, 1995, the Plaintiff  filed this action seeking declaratory and injunctive relief to prohibit enforcement of the Child Protection Restoration and Penalties Enhancement Act of 1990, codified at 18 U.S.C. § 2257.  The statute requires producers of materials containing visual depictions of  "actually sexually explicit conduct", as defined therein, to create and maintain records concerning the identity and age of all performers depicted.  18 U.S.C. §§

-2-

2257(a) and (h)(1).

Producers must ascertain and record each performer's name (including any professional name, nickname, or alias used by such person) and date of birth.  18 U.S.C. § 2257(b).  In addition, a legible copy of an identification document (*e.g.*, driver's license, passport, or state identification card) must be kept verifying the personal information of each performer.  28 C.F.R. § 75.2(a)(1).  Producers also must maintain these records at their business premises and are required to make them available to the Attorney General for inspection at all reasonable times.  18 U.S.C. § 2257(c).  Furthermore, each book, magazine, periodical, film or videotape covered by the statute must contain a conspicuous statement of the address at which the  records are kept.  18 U.S.C. § 2257(e).  Any producer who does not comply with the statute is subject to criminal penalties.  18 U.S.C. § 2257(i).

Plaintiff Connection Distributing is a Cleveland corporation that publishes sexually explicit "swinger" magazines.  According to Patricia Prementine, Editor of Connection Distributing and a self-proclaimed swinger, "swinging" is "an alternative social and sexual lifestyle comprised mostly of mature adults who believe  in sexual freedom and do not believe in sexual monogamy.  [Swingers] allow their partners the freedom to experience sexual relationships with others."  (1996 Transcript at 4.)[1]

The Plaintiffs' magazines consist, *inter alia*, of advertisements placed by individuals seeking to meet others in the swinging lifestyle.  The ads, which generally contain the author's biographical information, personal facts, and an identification number, are often accompanied by

---

[1]  References to the "1996 Transcript" are to the Transcript from the initial preliminary injunction hearing held on April 8 and 9, 1996.

-3-

one or more sexually explicit photographs.  Individuals who wish to respond to an ad may

submit a letter to the Plaintiff which, for a handling fee, will forward the correspondence to the

person who placed the ad.  In this fashion, the identity of the one who placed the ad remains

confidential.

Counts 1 through 4 of the Amended Complaint are essentially drawn from the original

Complaint.  In these counts, the Plaintiffs assert that the records requirements of the statute

violate their First Amendment rights because they restrain and chill speech and expressive

activity, and restrict the right to free association.  The Plaintiffs allege that people will simply

refrain from expressing themselves through the magazines rather than provide the identifying

information required by the statute.

On August 20, 2003, with the Court's permission, the Plaintiffs filed their Amended

Complaint adding Counts 5 through 7 asserting violations of the Fifth Amendment.  The Court

permitted the amendment based upon an intervening statutory change to 18 U.S.C. § 2257(d)(2).

As originally drafted, this section provided that evidence obtained from the records could be

used only for prosecutions of violations of  "this section".  In other words, the records could only

be used in prosecutions for violations of the records requirements themselves.  During

Congressional hearings, this limitation on use of the records was touted as one way by which the

records provisions were narrowly tailored to achieving the government's interest of protecting

children.  The Court also relied on this limitation as one basis for concluding that the statute is

narrowly tailored.  (Court's Memorandum of Opinion ,dated May 25, 2000, at 9-10.)

On April 30, 2003, Congress amended section 2257(d)(2) to permit evidence from the

records to be used in prosecutions of violations of  "this chapter or chapter 71".  By this change,

-4-

though small in words, the permissible use of the records has been expanded greatly.  Now, the records can be used broadly in criminal prosecutions for obscenity and child pornography.   In Counts 5 through 7, the Plaintiffs assert that the record keeping and use provisions, as amended, violate their Fifth Amendment rights, particularly the right against self-incrimination.

On June 23, 2005, new regulations became effective that implement the statutory records requirements.  In particular, the definitions of primary and secondary producers of sexually explicit materials were expanded to include those who create and publish digital and computer-generated images.  28 CFR § 75.1(c)(1) and (2).  By their terms, these regulations expand the application of 18 U.S.C. § 2257 to depictions on the Internet.  The regulations, however, contain exemptions for providers of web-hosting services and remote computing services who do not, and reasonably cannot, manage the sexually explicit content.  28 CFR § 75.1(c)(4)(iv) and (v).

The Plaintiffs maintain an online service that allows its members to contact one another.  The service contains thousands of member profiles, each of which can contain up to one hundred photographs.  Members post their own profiles and can change the content whenever they want, and often do.  Many of the photographs are sexually explicit.  Importantly, with respect to the online service, the Plaintiffs are essentially a web host.  Content of the member profiles is posted and controlled by the members themselves without the Plaintiffs' involvement.  The Plaintiffs, therefore, have no control over content. The online service also includes "chat rooms" by which members can converse over the Internet, as well as see each other using web cams.  The Plaintiffs likewise have no control over the content provided by members to each other via the chat rooms. (Transcript of Hearing, August 26, 2005 at 16-22.)

In addition, the new regulations define what constitutes "inspection at all reasonable

times" pursuant to 18 U.S.C. § 2257(c).  In particular, inspectors are "authorized to enter without delay" and without notice during business hours.  A random inspection can be made once during any four-month period, and additional inspections can be performed if there is a reasonable suspicion that violations have occurred.  In addition, inspectors may copy any records, and a law enforcement officer can seize any evidence of a commission of a felony found during an inspection.  See 28 CFR § 75.5.

On June 16, 2005, the Plaintiffs filed a motion for a temporary restraining order to preclude enforcement and application of the new regulations.  On August 26, 2005, by agreement of the parties and the Court, this motion was converted into a motion for a preliminary injunction.  On that day, the Court held a preliminary injunction hearing limited to evidence regarding the effects of the new regulations.

## II.  LAW

The Defendants seeks summary judgment that the statute and regulations are constitutional as a matter of law. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule 56.  The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts

-6-

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law

identifies which specific facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). To avoid summary judgment, the non-movant must "make a showing sufficient to

establish the existence of an element essential to the party's case, and on which that party will

bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144,

158-59 (1970)). However, the non-movant must "do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the

parties will not defeat an otherwise properly supported motion" for summary judgment.

Anderson, 477 U.S. at 247-48.

In response to the Defendant's motion, the Plaintiffs seek a preliminary injunction

against enforcement of the statute and regulations. Injunctive relief is available if there would be

no adequate remedy at law. Reese v. City of Columbus, 71 F.3d 619, 622 n. 2 (6th Cir. 1995),

cert. denied, 117 S. Ct. 386 (1996). The purpose of a preliminary injunction is to preserve the

relative positions of the parties until a trial on the merits can be held. Six Clinics Holding Corp.,

II, v. Cafcomp Systems, Inc., 119 F.3d 393, 400 (6th Cir. 1997).

A Court considers the following four factors when determining whether to grant a

preliminary injunction: (1) the likelihood of success on the merits by the party seeking the

injunction; (2) whether the party seeking the injunction will suffer irreparable harm for which

there is no adequate remedy at law if the injunction does not issue; (3) the probability of harm to

-7-

others if the injunction is granted; and (4) the public interest in the grant or denial of the injunction.  McPherson v. Michigan High School Athletic Association, Inc., 119 F.3d 453, 459 (6th Cir. 1997); Six Clinics, 119 F.3d at 399; Golden v. Kelsey-Hayes Co., 73 F.3d 648, 653 (6th Cir.), cert. denied, 519 U.S. 807 (1996).  The factors are not prerequisites, but are to be balanced to determine whether the equities warrant issuing the preliminary injunction.  McPherson, 119 F.3d at 459; Six Clinics, 119 F.3d at 400; Golden, 73 F.3d at 654.

The Sixth Circuit affirmed this Court's decision that the statute is to be analyzed under intermediate scrutiny principles.  Under intermediate scrutiny, a statute or regulation is constitutional under the First Amendment if its obligations are narrowly tailored to further a significant governmental interest, and leaves open alternative channels for communication.  Connection Distributing Co. v. Reno, 154 F.3d 281, 291 (6th Cir. 1998), citing, Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  A statute is narrowly tailored if it promotes a substantial governmental interest that would be achieved less effectively absent the statute.  Turner Broadcasting System, Inc. v. F.C.C., 512 U.S. 622, 662 (1994), citing, Ward, 491 U.S. at 799.

III.  ANALYSIS

A.  The Sixth Circuit's Remand

Counts 1 through 4 are essentially drawn from the original Complaint and assert that the statute at issue violates the Plaintiffs' First Amendment rights to free speech, expression, and association.  Although the Court has permitted broad discovery and briefing on the validity of the statute under the First Amendment, the actual remand order of the Sixth Circuit is narrow.  This Court has been instructed to reconsider its previous ruling in light of recent Supreme Court

precedent, including without limitation the four cases identified in the remand order. Accordingly, the Court's previous decision of May 25, 2000 is incorporated here by reference, and the discussion here is limited to the application of recent Supreme Court precedent.

The Court begins with an analysis of the cases referenced by the Sixth Circuit.  In Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton, 536 U.S. 150 (2002), a local ordinance prohibited door-to-door advocacy without first registering with the mayor and obtaining a permit.  The permits were free and routinely issued, but they had to be carried by any canvasser and were subject to inspection by police.

Without specifically assigning a level of scrutiny, the Supreme Court invalidated the ordinance as overbroad.  The village asserted that the purposes of the ordinance were to prevent fraud and crime, and to protect residents' privacy.  The permit requirement, however, encompassed all speech, including highly protected political and religious expression historically afforded the highest levels of  First Amendment protection.  The permit requirement also precluded spontaneous advocacy.  Given the breadth of the restrictions, the ordinance was not tailored to achieving the stated governmental interests.  Id. at 165-69.

Watchtower involved restrictions on all speech, including highly protected political and religious advocacy, of a "breadth and unprecedented nature".  Id. at 168.  The ordinance bears no resemblance to the statute at issued here, so the decision does not bear on this Court's previous analysis.

In City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002), a local ordinance prohibited the inclusion of more than one adult entertainment business within the same building or structure.  The ordinance was based on a study showing that concentrations of adult

entertainment businesses are associated with increased crime in the surrounding community.
The Supreme Court applied intermediate scrutiny to the ordinance because the ordinance was not
aimed at the content of the products of the businesses, but rather at the secondary criminal
effects.

The plurality opinion in <u>Alameda</u> is instructive regarding the evidentiary burdens
required to justify content-neutral restrictions.  A legislature may rely on evidence "reasonably
believed to be relevant" for demonstrating the connection between speech and the governmental
interest.  A challenger must then cast doubt upon the legislature's rationale or evidence.  <u>Id</u>. at
438, <u>citing</u>, <u>Renton v. Playtime Theatres Inc.</u>, 475 U.S. 41, 51-52 (1986).  A legislature also may
make common sense inferences from empirical data and be given a reasonable opportunity to
experiment with solutions to address the secondary effects of protected speech.  <u>Alameda</u>, 535
U.S. at 438, <u>citing</u>, <u>Renton</u>, 475 U.S. at 52.  Justice Kennedy concurred with the plurality opinion
regarding these evidentiary requirements.  <u>Alameda</u>, 535 U.S. at 449, 451.

The Plaintiffs do not dispute the Congressional findings, relied upon by the Defendant,
that child pornography is a substantial governmental interest about which legislation is
appropriate.  It also is a reasonable conclusion that age verification is one method of reducing the
likelihood that children are exploited in sexually explicit entertainment.  The Plaintiffs' primary
evidentiary objection is that the Defendant has not demonstrated that *universal* age verification is
tailored to promoting the government's interest.  The Plaintiffs argue that there is no rationale for
requiring adults in their thirties, forties, and even fifties to provide age verification when they
obviously are of the age of majority.  Indeed, in the 1996 preliminary injunction hearing, the
government's witness on this issue acknowledged that the adult ages of numerous participants

-10-

were obvious in the Plaintiffs' publications solely from the magazine photographs.

However, despite the Plaintiffs' contention that the swinging lifestyle is essentially a middle-aged phenomenon, there are numerous examples in evidence of participants in their early twenties, and some as young as eighteen and nineteen.  (See, e.g., Defendant's Memorandum In Support of Motion For Summary Judgment, Docket No. 93, at 19-22; Defendant's Memorandum In Reply, Docket No. 96, at 19-24.)  Age verification is appropriate to ensure that these younger individuals are indeed adults.  Age verification is also appropriate to ensure that adolescents who may look older are not subjected to sexual exploitation.

In addition, the Court finds that universal age verification is reasonable.  The Plaintiffs' position would require the government to carve out an exception based upon the nature of their particular business model.  Presumably, other adult businesses would then demand comparable individualized treatment.  The Plaintiffs' approach, therefore, would present an unworkable web of separate standards, business by business, that would be open to charges of vagueness and equal protection problems.  Such a system would be difficult, if not impossible, to enforce. Accordingly, the Court concludes that consistent with the standards set forth in Alameda, the Defendant has satisfied its evidentiary burdens that universal age verification is an appropriate manner to combat child pornography.

In Aschcroft v. Free Speech Coalition, 535 U.S. 234 (2002), the Supreme Court addressed the validity of certain clauses of the definition of child pornography contained in 18 U.S.C. § 2256 at that time.  Specifically, the Supreme Court addressed prohibitions against images that "appear to be" or "convey the impression" of minors engaged in sexually explicit conduct.  These provisions prohibited depictions of conduct that did not involve actual minors,

such as computer generated images, or images of adults made to look like minors. These provisions also arguably prohibited depictions that were suggestive while not showing actual sexual conduct. Indeed, the Supreme Court noted that the definition is broad enough to preclude a wide range of speech of "serious literary, artistic, political, or scientific value". Id. at 246. The Court held these provisions to be invalid as vague and overbroad.

The former definition of child pornography was a content-based restriction that directly prohibited broad classes of speech. The challenge to the current record requirements are not comparable because they are content-neutral and merely require age verification of participants. No speech is actually prohibited. Accordingly, Free Speech Coalition is inapposite.

In United States v. Playboy Entertainment Group, Inc., 529 U.S. 803 (2000), the Supreme Court addressed requirements that cable television operators prevent "signal bleed" of sexually explicit programming. Signal bleed occurs when one can hear or see incomplete video or audio portions of otherwise scrambled programming. The law required cable operators either to fully block sexually explicit programming to non-subscribers, or "time channel" such programming by airing it only between 10:00 p.m. and 6:00 a.m. Purveyors of adult cable programming challenged the restrictions.

Unlike the current case, the Supreme Court in Playboy Entertainment concluded that the restrictions were content-based and applied strict scrutiny. The restrictions were deemed invalid because there were less restrictive means of furthering the government's interests. Id. at 816, 827.

Playboy Entertainment has no bearing on this case because intermediate scrutiny applies here. Under intermediate scrutiny, a statute is narrowly tailored if it promotes a substantial

-12-

governmental interest that would be achieved less effectively absent the statute.  <u>Turner</u>

<u>Broadcasting System, Inc. v. F.C.C.</u>, 512 U.S. 622, 662 (1994), <u>citing</u>, <u>Ward</u>, 491 U.S. at 799.

Although a statute must leave open alternative channels of communication, it need not be the

least restrictive means of advancing the government's interest.  <u>Turner</u>, 512 U.S. at 662; <u>DLS,</u>

<u>Inc. v. City of Chattanooga</u>, 107 F.3d 403, 412 (6th Cir. 1997), <u>citing</u>, <u>Ward</u>, 491 U.S. at 799.  In

<u>Playboy Entertainment</u>, the Supreme Court stated: "We have made clear that the lesser scrutiny

afforded regulations targeting secondary effects . . . has no application to content-based

regulations targeting the primary effects of protected speech."  <u>Id</u>. at 815.  By the same

reasoning, strict scrutiny cases have no application in analyzing content-neutral restrictions, such

as the records requirements challenged here.  Therefore, this Court's previous conclusions,

rendered by application of intermediate scrutiny, are still valid in view of <u>Playboy</u>

<u>Entertainment</u>.

        In addition to the four cases specifically referenced in the Sixth Circuit's remand order,

the Court has identified the following recent Supreme Court cases worthy of discussion.  In

<u>Ashcroft v. American Civil Liberties Union</u>, 542 U.S. 656 (2004), the Supreme Court analyzed a

provision of the Child Online Protection Act ("COPA") that prohibits the knowing posting of

material on the Internet "for commercial purposes" that is "harmful to minors".  The statute

provides an affirmative defense for those who employ specified means to prevent minors from

gaining access to the prohibited materials.

        The stated purpose of the statute is to protect minors from gaining access to sexually

explicit materials deemed harmful.  The Supreme Court upheld a district court's grant of a

preliminary injunction against enforcement of the statute.  In determining the likelihood of

-13-

success on the merits, the Supreme Court concluded that the statute was a content-based

restriction and applied strict scrutiny.  Following Playboy Entertainment, supra, the court found

that evidence of less restrictive alternatives is sufficient to justify the preliminary injunction.  Id.

at 670.

Ashcroft directly relied upon and followed the analysis in Playboy Entertainment.

Therefore, Ashcroft is inapposite for the same reasons

In City of Littleton v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774 (2004), the Supreme Court

addressed whether a licensing scheme for adult businesses provided for adequate and timely

court review procedures.  The court concluded that because the licensing scheme did not seek to

censor content, but instead provided neutral and nondiscretionary licensing criteria, simple

judicial review was required.  Id. at 782-84.  Though procedural in nature, this case confirms a

lesser standard of scrutiny for content-neutral statutes, and thus supports this Court's previous

decision.

In United States v. American Library Association, Inc., 539 U.S. 194 (2003), the

Supreme Court reviewed a Congressional statute regulating how libraries provide Internet

access.  The statute provides that as a condition of receiving federal funds to provide Internet

access, libraries must employ blocking or filtering software to prevent access to illegal materials

such as obscenity and child pornography, as well as prevent minors' access to sexually explicit

and other harmful materials.   A group of library associations, patrons, and civil liberties

organizations challenged the restriction on First Amendment grounds.  They argued that the

blocking and filtering programs were imprecise and inevitably blocked access to legal materials,

including materials with educational and research value.

-14-

The Supreme Court upheld the statute in part on the grounds that the restrictions were sufficiently tailored to the interests of protecting library patrons, particularly minors, from accessing illegal and/or potentially harmful materials.  The Court noted that the blocking programs generally fulfilled their purpose, and the programs could be disabled or altered by library employees if specific situations warranted.  Id. at 208-209.

American Library supports this Court's previous decision that the current statute is narrowly tailored.  Restrictions are valid so long as they further the government's interest while not overly restricting protected expression.  As stated in the Court's previous decision, the current statute does not prohibit any speech, but only requires participants to provide the Plaintiff with records verifying identity and age.  In addition, the restrictions leave open alternative avenues of practicing the swinging lifestyle.

Pursuant to the Sixth Circuit's remand order, this Court has reviewed recent Supreme Court decisions to determine whether reconsideration and reversal of this Court's prior decision is warranted.  Upon review of applicable case law, the Court concludes that recent decisions of the Supreme Court do not warrant a reversal of this Court's granting of summary judgment on May 25, 2000.  Accordingly, summary judgment is granted as to Counts 1 through 4 that the statute does not violate the Plaintiffs' First Amendment rights.

B.  The Amended Complaint

In Counts 5 through 7, the Plaintiffs assert that the statute, as amended on April 20, 2003, violates their Fifth Amendment rights, particularly the right against self-incrimination.  The original statute permitted use of the records only in prosecutions for violations of the records requirements themselves.  The amended statute more broadly permits use of the records in

-15-

prosecutions for federal obscenity and child pornography offenses as well.

In determining whether a record keeping statute violates the Fifth Amendment, the Court analyzes the following factors: (1) whether the statute is directed at a highly selective group inherently suspect of criminal activity; (2) whether the regulation is in an area of law permeated with criminal statutes; and (3) whether compliance with the statute creates a substantial likelihood of prosecution. United States v. Alkhafaji, 754 F.2d 641, 643 (6th Cir. 1985), citing, Albertson v. Subversive Activities Control Board, 382 U.S. 70 (1965); see also California v. Byers, 402 U.S. 424, 430 (1971); Grosso v. United States, 390 U.S. 62, 64 (1968); Leary v. United States, 395 U.S. 6, 12-13 (1969); Securities and Exchange Commission v. Fehn, 97 F.3d 1276, 1292-93 (9th Cir. 1996), cert denied, 522 U.S. 813 (1997).

Only the second factor, that this area of law is permeated with criminal statutes, favors the Plaintiffs. The regulation of sexually explicit materials includes various criminal offenses such as obscenity and child pornography. This factor also is satisfied if the records would involve an admission of an element of a crime or supply a significant link in the chain of evidence tending to establish guilt. Alkhafaji, 754 F.2d at 644; Marchetti v. United States, 390 U.S. 39, 48 (1968). To the extent one of the Plaintiffs' customers engages in obscenity or child pornography, the records could provide evidence of age and participation.

The other two factors, however, weigh against the Plaintiffs. The first factor weighs in favor of constitutionality when many people fulfilling the records requirements are engaged in lawful activity. When such is case, the statute is not directed at a "highly selective and inherently suspect" group of people. Alkhafaji, 754 F.2d at 647; Byers, 402 U.S. at 430-31. A statute is valid when it serves a legitimate regulatory purpose. Fehn, 97 F.3d at 1292. In

-16-

contrast, a records statute is invalid when its primary purpose is to supply evidence for use in criminal prosecutions, and principally targets those engaged in illegal activity.  Haynes v. United States, 390 U.S. 85, 96-97 (1968); Grosso, 390 U.S. at 68.

Here, the primary purpose of the statute is regulatory – to protect children by preventing their exploitation in sexually explicit materials.  Although criminal prosecution is contemplated, the statute also is intended to act as a deterrent against the exploitation of children before it occurs.  The prosecutions that occur, therefore, flow from the regulatory purpose of protecting children.  In addition, adult participation in the Plaintiffs' publications is lawful, so the participants do not constitute an inherently suspect group.

This case stands in contrast to those cases in which regulations or statutes were invalidated.  In such cases complying with the records requirements was tantamount to an admission of a crime.  In  Albertson, the law required persons to admit membership in the Communist Party, which by itself was illegal at that time.  In Marchetti and Gross, the records constituted direct admissions that one had engaged in illegal gambling activity, and the records in Haynes pertained almost exclusively to possessors of firearms deemed illegal, like sawed-off shotguns and the like.  In Leary, the records specifically identified any complying individual as a marijuana possessor.  In the current case, however, the records requirements do not demonstrate participation in any illegal activity.  Adults are free to place ads in the Plaintiffs' magazines, and nothing in the records requirements alters that fact.  The Plaintiffs and their customers, therefore, do no constitute an inherently suspect group.

The third factor also weighs against the Plaintiffs.  This factor is whether compliance with the statute creates a substantial likelihood of prosecution.  To be invalid, there must be

-17-

reasonable cause to apprehend danger of prosecution from a direct answer.  A danger that is speculative or unsubstantial does not suffice.  <u>Ohio v. Reiner</u>, 532 U.S. 17, 21 (2001); <u>United States v. Apfelbaum</u>, 445 U.S. 115, 128-29 (1980); <u>Marchetti</u>, 390 U.S. at 48.  As shown in the previous paragraph, merely fulfilling the records requirements does not demonstrate involvement in criminal activity, and thus does not present a danger of prosecution.  Adult participation in the Plaintiffs' magazines is legal.

The Plaintiffs cite numerous cases over the past thirty years of obscenity prosecutions and examples of alleged over-zealous enforcement.  The Plaintiffs, however, do not demonstrate that these numbers are significant given the pervasive availability of sexually explicit materials and the enormous revenues generated by the industry.  (<u>See</u>, <u>e.g.</u>, Defendants' Reply, Docket No. 110, at 13.)  In particular, none of the cases cited involve the Plaintiffs, their customers, or the "swinging lifestyle" generally.  Accordingly, any purported threat of prosecution is speculative and insubstantial.

For the foregoing reasons, the Court concludes that the statute, as amended on April 30, 2003, does not violate the Fifth Amendment.[2]

---

[2]    The Plaintiffs rely on <u>In re Grand Jury Subpona</u>, 368 F. Supp. 2d 846 (W.D. Tenn. 2005).  The  Court rejects its analysis in favor of the analysis in this opinion.  The Plaintiffs also argue that the amended statute violates the First Amendment because it imposes additional restrictions on expression.  This Court (and Congress and the Sixth Circuit) cited the prior limits on using the records in criminal prosecutions as one way the statute is narrowly tailored to protecting children.  This ground, however, was not the sole reason why this Court deemed the statute to be sufficiently tailored.  The remaining reasons from this Court's previous decision are unaffected and sufficient to find the statute constitutional under the First Amendment.

-18-

C.  The Recent Regulations

The regulations effective June 23, 2005 present two issues: (1) whether the application of 18 U.S.C. § 2257 to the Plaintiffs' online service violates their constitutional rights, and (2) whether the regulations regarding the timing and nature of inspections, and the copying and seizure of the records, are constitutional.

With regard to the Plaintiffs' online service, intermediate scrutiny requires that a statute leave open alternative channels of communication.  Turner, 512 U.S. at 662; DLS, Inc. v. City of Chattanooga, 107 F.3d 403, 412 (6th Cir. 1997), citing, Ward, 491 U.S. at 799.  In this Court's previous opinion, the Internet was touted as a viable alternative avenue of communication.  The Plaintiffs' argue that the new regulations render the statute unconstitutional because it closes a significant alternative channel of communication.

The Plaintiffs assert that compliance with the regulations is impossible as to the online service because content is in the sole control of the members, not the Plaintiffs.  It would be impossible for the Plaintiffs to monitor the postings in thousands of member profiles, each containing numerous pictures (up to one hundred) and subject to frequent change.  The Plaintiffs also cannot control what is said in the chat rooms and shown using web cams.  Their only option would be to shut down the online service.

The Court disagrees.  Based upon the evidence in the briefing and adduced at the hearing, the Court concludes that with respect to their online service, the Plaintiffs provide web-hosting services and/or remote computing services as to which they reasonably cannot manage the sexually explicit content.  Accordingly, the exemptions contained in 28 CFR § 75.1(c)(4)(iv) and (v) apply.  Because the online service is exempt from the records requirements, there is no

-19-

constitutional violation.  In addition, as stated in the Court's previous decision, there are other alternative means of practicing the swinging lifestyle, including the use of non-explicit photographs, voice mail, e-mail, and private clubs.

The Court also concludes that the new regulations regarding the timing and manner of inspection are constitutional.  Again, the Plaintiffs argue that the regulations violate the Fifth Amendment right against self-incrimination.  The regulations, however, do not alter the nature of the overall statutory and regulatory scheme as analyzed in Section B above.  For the same reasons, there still is no Fifth Amendment violation.

In addition to the previous arguments, the Plaintiffs also argue that the new regulations governing seizure of the records provide an additional basis for violations of the First Amendment.  In Marcus v. Search Warrants of Property at 104 East Tenth Street, 367 U.S. 717 (1961), the Supreme Court held that procedures for seizing allegedly obscene materials must contain sufficient safeguards to protect legitimate expression.  The concern was that seizure procedures could be overly used resulting in suppression of constitutionally protected expression.  In Marcus, a statute granted law-enforcement officers broad discretion to determine if material was obscene.  A warrant had to issue for seizure, but the process was *ex parte* and highly deferential to the officer's opinions to the point where the review was essentially meaningless.  There was no procedure for in-depth analysis as to whether an officer was correct in deciding that materials met the legal definition of obscenity, as opposed to legitimate expression.  Id. at 731-33.

The Plaintiffs similarly rely on Roaden v. Kentucky, 413 U.S. 496 (1973), Lee Art Theater, Inc. v. Virginia, 392 U.S. 636 (1968), and A Quantity of Copies of Books v. Kansas,

-20-

378 U.S. 205 (1964).  In each of these cases, law enforcement officials were given broad discretion to determine whether materials were obscene, and then seize them.  There was little or no process to check that discretion to ensure that legitimate expression was protected.

Importantly, in these cases the actual sexually explicit content was seized.  Therefore, expression was effectively removed from public access, often permanently if the materials were subsequently destroyed.  In this case, however, only the identification records, and not the expressive content, can be seized.  The legitimacy of the expression, therefore, is not determined by the inspectors, but would be determined during a subsequent adversary process.  Expression, therefore, is not curbed as in the cases cited by the Plaintiffs.

For the foregoing reasons, the Court concludes that the new regulations, effective June 23, 2005, do not render the statute unconstitutional.

## IV.  CONCLUSION

Pursuant to the Sixth Circuit's remand order of September 24, 2002, this Court has permitted additional discovery and reconsidered its decision of May 25, 2000 in light of applicable recent Supreme Court precedent.  The Court concludes, as before, that 18 U.S.C. § 2257 is constitutional as a matter of law.

In addition, the Court has considered whether a different determination is warranted due to the statutory amendments of April 20, 2003, and the new regulations effective June 23, 2005. For the foregoing reasons, the Court concludes that the statute remains constitutional in view of the statutory and regulatory amendments.  The Plaintiffs thus cannot demonstrate any likelihood of success on the merits as required under the preliminary injunction standard.

Accordingly, the Plaintiffs' motions for preliminary injunction (Docket Nos. 108 and

118) are DENIED.  The Defendant's motion for summary judgment (Docket No. 105) is

GRANTED, and this action is hereby dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.


Issued:  May 10, 2006                              ___s/ John M. Manos_____
                                                   UNITED STATES DISTRICT JUDGE